First matter is U.S. v. John Mangan. We want to extend our appreciation and gratitude to the Council, of all Councils, because this schedule has gotten jugged around a bit to accommodate schedules, and we certainly appreciate our Council being willing to help us out with that. Is it Gizzi or Gizzi? Gizzi. Okay. Good afternoon. James Gizzi on behalf of Appellant John Mangan, who wants to have Step 3 of the sentencing procedure performed. That was not done when Mr. Mangan was sentenced. He's not seeking to have a full resentencing hearing like the government suggested in their December 8, 2008 letter to the court, which they provided. They directed parts of their brief, but they also said that if it's remanded, that they should get a full resentencing. He's not asking for that. He's asking for Step 3 of the sentencing procedure to take place. He's not appealing the imprisonment, the sentence portion of the imprisonment. It's Step 3 with respect to the term of supervised release, and there's four nonstandard conditions of supervised release. Well, there's some agreement in terms of the term that he was simply misadvised of the term. So as to that one issue, I'm not certain that there's a lot of disagreement. My understanding is that the plea agreement stated, what, two or three years in the maximum is more than that. It is more than that, yes. And I think the Assistant United States Attorney who handled it and myself both were, it was a mutual misunderstanding. It was going to be two to three years. And the government in their brief said that Mr. Mangan is not seeking to withdraw his plea, vacate his plea. He's not. Simply wants the Step 3 performed. What would it look like? And forget for a second the conditions. Let's just look at the term. Are you saying that if it were to go back down, he would be allowed to, well, how would it work? Is it that the term of supervised release would have to be set consistent with the plea agreement, even though I think the judge did tell him correctly what the term was during the course of the sentencing procedure? Yes, he did. He did say the correct term during the course of sentencing. The, I don't know that the judge would be bound by what was in the plea agreement, but I don't know that he could go above 10 years. What we're saying is the judge would not, it wouldn't go back for the judge to change, increase the term or to make any of the conditions more restrictive, but to explain his reasoning. For the term and the conditions so that it's, it would be substantively to see if it's substantively reasonable. With respect to two of the conditions, I don't know that the court needs to remand that because the polygraph testing and the mental health, the mental health treatment, if you pick up, we're suggesting you pick up the sentencing hearing from where it concluded. Excuse me, counsel, may I assume, given where you've begun your argument, that you're not pursuing the notice issue that I understood you to have raised? Yes. All right. Yes. Amplify that for me. I'm not trying to understand. What is the origin of that argument? Of the notice? Of the notice for special conditions. I guess we call them unusual or extraordinary special conditions. That, we're, we're withdrawing that. I know now that there's subsequent to the briefing, it's been, there's a decision that there's not even notice required for an upward bearing. But Arizari would, would. Yes. Would end your argument. Yes. And the case we cited was from the Ninth Circuit. And in actuality, in that case, the government agreed that there should be notice. But I think now after Arizari, we're not pursuing that. We're simply here asking that the sentencing hearing, which was, which was conducted appropriately by the court, but it wasn't completed. And the government says if it goes back, they should be able to put in, in evidence or to challenge things that we had objected to. So I responded to that yesterday because I received their letter, December 8th, 2008, stating for the reasons why that would be waived. I can go into that if the court feels that's an issue. But what we're really saying is you didn't complete the hearing. Take it from where you concluded in September 2007 and complete it, which is step three, which is required, which is required. Step three on the boon term. Yes. So I'm still trying to figure out what it would look like in terms of the length of the term, as well as some of the conditions. And on the notice thing, it's smooth, but it seems to me when I read your brief. Yes, the notice. There are times when you don't know what the conditions are going to be until after you finish the sentence hearing, you've talked to the defendant, you've heard witnesses, and you begin to get an idea as to what makes sense. It would be impossible to require a notice be given beforehand. Yes. But if we walk through the conditions, given what happened here and the prior offense, I guess the 1995 offense, some of these seem like no-brainers. Participation in a mental health program, are you contesting that that's an appropriate condition? I judge, yes, that is not appropriate. It can be remanded for reasonings, but in Pruden, the Pruden case, mental health treatment was not permitted by this court in that case because the court noted, one, the government didn't request it, and that's the same here. Two, probation didn't request it, and that's the same here. Probation did not request a psychological or psychiatric evaluation in order to prepare the pre-sentence report. Well, whose obligation is sentencing? Determining an appropriate sentence, is that the job of the probation department or is that the job of the judge in consideration of the probation department's recommendations?  I'm just saying this is consistent with what happened in Pruden in which this court noted that the government didn't request mental health treatment and neither did the probation. What was the offense in Pruden? The offense in Pruden was a gun charge. Okay. Isn't that very different than child pornography where we have a man who is not only looking at child pornography but has attacked children? And I think there is an acknowledged psychological problem with people who attack children sexually that you don't have in a gun case. The prior offense, I don't know if the court is looking at parts of the pre-sentence report that were objected to. She talked about certain details of that offense as well as... Let's just forget the prior offense, what he pled to, and the statement that he gave admitting to what was going on in the boat in this case. I mean, isn't it almost, I don't know, you can't have judicial malpractice, but if you could, wouldn't it be judicial malpractice to not require participation in a mental health program and mental health treatment in this kind of defendant? I cannot imagine a judge not doing that. No, because... You don't do your client any favors, it would seem to me, by removing him from the avenues that might get him the kind of help that he may need so that we're not back here and get a third offense when he gets out. But I think there has to be some connection other than the offense itself. You still have to look at that person and have... Why? Because you cited to Pruden, following up on Judge Roth's question, Pruden emphasized, and these are the exact words, the complete absence of facts that would indicate a need for this mental health treatment. That's a big part of the difficulty Judge Becker and the panel had in Pruden. In this case, don't we have facts not only as to guilt of this offense, but this was a recidivist offender as well, not to mention what Judge Roth has pointed out, and that is the nature of the sexual offense itself. Aren't those facts that certainly separate this case and the nature of this case from Pruden? Well, if I may, with respect to Pruden, Pruden, there were several things. This is someone who raised himself since he was 12, had a substantial juvenile record, a substantial criminal record. His mother was a cocaine addict in prison. His father didn't meet until he was 17. He had used marijuana, and he admitted he had a drinking problem. Most people would say, this person needs some counseling to deal with his issues of life. And the court said, if we're going to do that, then everybody, the judge actually did it there because he wanted to address the cycle of recidivism, was what the district judge, why he ordered mental health treatment in Pruden because of recidivism. And this court said, no, otherwise, we're going to have, then everybody should have that. Counsel, let's assume that the panel were to conclude that this is, based on the nature of the offense and the other facts in the record, an appropriate case for a condition of mental health treatment. Isn't there also an issue that was also present in Pruden and that I think you've raised as to delegation? That's the big issue. Isn't that the big issue here instead of all the time we're spending? Otherwise, the language of the condition was that he shall participate in a mental health program for evaluation and treatment, but it reposes as directed by the U.S. Probation Office. Now, is that an appropriate delegation? No. The rest of it reads the defendant shall remain in treatment until satisfactorily discharged and with the approval of the U.S. probation. Right. Our contention, and that's what we put in the brief, is that that is not satisfactory, that then that gives probation total discretion to make the determination, notwithstanding whatever the treating professional concludes. There could be an evaluation that says doesn't need ongoing treatment at this time, and the probation officer can override that and request that. And that's also a problem with some of the other conditions here, the contact with minors. That was not something like no unsupervised. It's completely at the control of probation to cover all phases of his life, whether it be work, volunteer work, which he had done while he was incarcerated in the Passaic County Jail, and also any type of socializing with. The sentencing judge cannot be involved on a day-to-day basis with all of the details of supervision. So what would you have the district court say in this case? How much discretion is appropriate for a probation officer, given the necessity that the probation officer is the one who's going to be dealing with this client on a day-to-day or week-to-week basis? With respect to the Internet monitoring and contact with the minors, what would be more narrowly tailored and appropriate for the offense would be, with respect to the minors, no unsupervised contact as opposed to the probation officer making a decision. Let's say Mr. Mangum was invited to a party. My time has ended. I can continue. Okay. That if he was invited to be in a social setting with people that were in the pre-sentence report, there's three people that were interviewed, one of whom is a psychologist, Mr. Smilan. His Ph.D. And they interacted and they talked about how he was well-regarded in the community. And if he was going to be trying to socialize with them and there could be grandchildren, children there, even with adults present, probation would say, well, I'm not going to permit that. So they would have too much discretion. A supervised contact with minors would be appropriate, as well as with the Internet, instead of having every keystroke monitored. I believe it was in Freeman this court had suggested having unannounced visits and checking the computer. And something like that would be. How do you check the computer without monitoring its usage? I don't think you have to monitor. Unless you have software under it to show the keystrokes. How do you check the computer? I think you can have. Excuse me. Go ahead. I think there could be either some. I think there's a firewall. And I'm not very good with computers. Some type of thing to prevent access to various sites and or a way to look at the hard drive, but not monitor everything that's done on the computer. The standard conditions adopted by the court, what are those standard conditions of computer use? They were supplied by the, as a supplemental appendix, I did read them. And I know it does say, it does say it could be as much as monitoring the keystrokes. We, to be candid, we don't have as much of a problem with those two conditions, as long as they were a little more narrow. The main problem was step three wasn't done to explain that. And with the term, without the explanation. But it's the other, it's the mental health and the polygraph testing. And the polygraph testing, again, nobody requested that. In the case of United States v. Lee, the judge before sentencing had Mr. Lee evaluated and gave the evaluation report to the defense. Then they had, the defense had their own evaluation. And the recommendation by a professional was that Lee should have frequent, said frequent polygraph testing to the government's, just cited the approval in Lee without anything else. And it brought me back to the Pruden case that it would, if you're going to say that because you have to tell the truth to your probation officer, polygraph testing is fine, then everybody should have it. And it just doesn't seem appropriate here. The other two conditions that we said, we think there's more of a basis, even though it wasn't stated. Did you reserve time? Three minutes. Okay, fine. I might not have said it, but I told it to the court ahead of time. Thank you. May it please the court, Stephen G. Sanders on behalf of the United States, the appellee in this case. I want to start back at the beginning with what Mr. Giese said regarding what needs to happen in this case. I think he said that step three of the Gunter process wasn't completed. But that's not altogether true. The district judge in this case, Judge Eberblatt, issued a ten-year term of imprisonment. That was a statutory mandatory minimum. And in doing so, he said that the 35538 factors did not require a sentence longer than that. And at the same time, he then imposed a ten-year term of supervised release with conditions. Now, the explanation could have been more robust. But in this situation, as the panel has already noted, we have a guilty plea and a fairly robust guilty plea colloquy to a possession of child pornography. And without looking at any of the surrounding facts of that offense, except as admitted by Mr. Mangan at his guilty plea colloquy, and looking at the prior conviction for sexual assault on a minor, without looking at the underlying facts of that conviction, those two things alone are sufficient on plain error review to justify all four of these conditions and the term of supervised release that were imposed. What about the delegation of authority to the probation office? Frankly, I don't know. Following the directions of the U.S. Probation Office, we expect to contact the children under the age of 18. What if he's got a minor niece or a nephew? Are they included? Well, the PSR indicates he has no living family, and that's a paragraph that was not objected to. And I'll find insight to that in a moment. It's often the niece and the nephew and the family members you suffer the most from. And I was going to say, I think given this defendant's background and his history, I don't know that he should be having unsupervised contact, even with distant relatives. He was six years old. You're right. The case that was a problem at Volker was one where the defendant had minor children of his own. That was the problem there. What about the delegation of the mental health evaluation and or treatment, however? Speaking only for myself, I'm bothered by the breadth of that provision, in part because there's a vast difference between mere evaluation and subsequent treatment. And as I read the language of this, as directed by the U.S. Probation Office, it would seem to me to repose in that office discretion not only to evaluate, but also to prescribe treatment, which seems to me to be beyond the competency of a probation officer. I understand your concern. And then that treatment until satisfactorily discharged and with the approval of the U.S. Probation Office. So the U.S. Probation Office also has discretion to determine when the period of treatment ends. We do not read the condition that way. We understand the condition as requiring Mr. Mangan to undergo evaluation, and the Probation Office will tell him where to undergo that evaluation. It may turn out that after that evaluation, he doesn't need treatment. But what's this say if the evaluation suggests that he does need treatment? If he does need treatment, then he must comply with the treatment plan that is developed by probation. That's a ministerial task. I mean, the district judge has said, have an evaluation, and if necessary, treatment. So if the evaluation determines that he needs the treatment, he must undergo that treatment. And if he's discharged from that treatment program by the treating physician, we don't read this condition as allowing the probation officer to keep him in treatment. I read it as saying satisfactorily discharged and with the approval. I have no problem with satisfactorily discharged, since that would seem to suggest professional determination. But this is in the conjunctive. I understand that. But we would not construe it that way. And we would not, if the Probation Office came before the court and wanted to bring on an application for a petition to violate him for that, we would not prosecute that violation. We don't read this condition, and we wouldn't read it, in order to violate this defendant. We have to remember we're on a plain error review here. You might not, but what about some guy who follows in your place three years from now and simply looks at the order and says, well, he's in violation. Let's violate him. Or another judge. The case could be transferred to another judge. The first judge said, and he's in violation of that judge's conditions. Well, if I'm authorized after this argument to make a written representation to this court, so that's binding on the government, I will consult with my superiors and do that. Isn't it better, though, for court orders to say what they're intended to mean rather than relying upon principles of estoppel and agency to determine conditions of supervised release? Why not just send it back and have this clarified? Well, it's, number one, we're on plain error review here. And I realize that Pruden was as well. But the other thing is we have a process, too. If there is a violation, even if it's brought on and someone doesn't abide by a representation made by the government not to prosecute that, that is still a defense to the violation. Well, what if he doesn't violate? What if he keeps on going to psychiatric treatment, which the treater says isn't necessary and he says isn't necessary but the probation officer won't let him off? I mean, again, he can complain that I don't need this, I don't want to go to this, I'm going so I won't violate but I'm being forced to do something that's taking up time, that's interfering with things I want to do with my life. I mean, I agree that that is a problem with a condition that's vaguely drafted. You would concede, would you not, Mr. Sanders, that that is literally what this states and permits. That is to say that satisfactorily discharged and with the approval of the U.S. Probation Office is in the conjunctive. It therefore means in its practical import that the probation office could actually trump, as Judge Roth's question suggests, a professional determination by a treating psychiatrist or psychologist. If it's read literally, we do not think the probation office would read it that way and keep him in treatment. You know, judges tend to read things literally. I assume probation officers do too. We're expected to. So you're putting the probation officer in a position of trying to glean from the judge's language what the judge meant to say, not what the judge said. The probation officer, I don't know what the judge said. That's not what he meant to say. So we're not going to pay any attention to this court order. We're just going to ignore that. That's what you're saying has to happen here. Either that or, as I said, we would not. We're the ones who have to ultimately prosecute or violations of supervised release that are brought on by the probation officer. And in that situation, certainly we wouldn't prosecute that violation. But like I said, I will go back to my superiors and see whether we can submit something to the court that would allay those concerns. Again, and this is on plain error review. The defendant did not object when this condition was imposed. Well, why wouldn't that be plain error to have something which puts that much discretion in the hands of a probation officer? Don't you think it's pretty much contrary to prudent? Yeah. Well, I mean, prudent limits me. That was a plain error case in this court. I mean, we've got two of the prudent judges sitting here. I know. And the court found the third and fourth step. But I think in that case also, I believe it was the District of Delaware was defending that condition, and that condition plainly said at the discretion of. And that's a complete difference because, number one, the condition there wasn't even authorized by anything in the factual record. It was one problem with that condition. Here we don't have that problem. Number two, that condition gave total authority to decide whether the person even had to go attend counseling. And this condition doesn't do that. This condition says you have to undertake the evaluation. And if the evaluation requires you to undergo treatment, you must undergo that treatment. What about the contact with children? Shouldn't there be some kind of structure on that? Following the directions of the U.S. probation officer with respect to contact with children under the age of 18, when we see those provisions all the time, usually when they're there, always when they're there, when they come up on the field, the judge has set the parameters within which the probation officer may exercise his or her discretion, not just leave the door totally open to the exercise of discretion by the probation officer. Well, we have a 10-year sentence here. So this condition is going to come into play when Mr. Mangan has released from prison. And his chief concern with it is, is it going to bar incidental contact, is what I heard Mr. Kesey say. That's one of the concerns. But we won't know until he gets out. He has no living family right now, so it can't be construed to bar him from contacting children or family members. He's not indicating any intention to have children on his own, but were that to happen, he could move to modify the condition in that situation. The issue is whether or not it would even apply to children of his own. It's just written very, very problematically, all the conditions are, because it just seems to basically delegate the authority totally to the unguided discretion of the probation officer with all of these things. Some of them make sense to do that. Well, certainly not right ban in this case on contact with minor children would have been, and is, appropriate. And that was upheld in the second lawyer opinion in 2001. And in that case, the judge, to be sure, specified in his statement of reasons that the defendant would have contact with a, I think, supervised contact with the supervision being somebody other than the defendant's wife. I hear the probation officer could conclude that it's okay for the defendant to have unsupervised contact with any minor child. All it says is following the directions of the probation officer with respect to contact with children under the age of 18. What if the probation officer, and this is kind of stretching this to the point of being unrealistic to try to make a point, what if the probation officer decided, you know, this is a good guy, he's been in prison for 10 years, I don't see any problem here. I don't have any problem if he becomes a department store Santa Claus and lets kids sit in his lap all day long. That could happen. There's nothing in the requirement here to prevent that. Well, it couldn't happen consistent with the other condition that's in the conditions that the judge imposed, which was a limitation on any employment that would have as part of this. Volunteer. Volunteer work or employment that has as part of its job description contact with minors. That's a separate condition. Basically volunteers to go down to the local department store and play Santa Claus. The probation officer says okay. That probably almost certainly would never happen, but the point I'm trying to make is there's got to be some parameters on the probation officer's discretion because it's the judge that's setting these terms, the broad terms, and it's not the probation officer, and to leave it up to the probation officer to decide something of that import without any restriction seems to me to be problematic. And again, I don't read the condition to allow the probation officer to allow contact. I think this condition is saying there can't be contact unless the probation officer permits it and under those terms that the probation officer prescribes, which is exactly the sort of ministerial duties we expect the probation officers to undertake. So we don't see it as an unlawful delegation. Let me say a quick word, if the court will permit me, because I have two minutes left. It's about the state of the record. Mr. Giese's letter yesterday and an argument today is saying that if this goes back, at least on grounds that the record was insufficient factually to justify any of these conditions, then the government shouldn't get a shot at proving up the paragraphs of the PSR that were objected to, and I have to respectfully disagree. It was the defendant who pre-termitted any proof. He's not objecting. If he had objected, you would have presented something. Exactly. I mean, and so … I sympathize with your position. And I think, and he said today that it should go back and the hearing should pick up where it left off, and if things had played out as they should have properly, hypothetically, the defendant would have objected and we would have said, Your Honor, we want either a continuance, or if we had our case agent sitting behind us, we would have put the case agent on and said, if the defendant's going to contend that these conditions aren't warranted by this record, and I think they're easily warranted just by the fact of the current conviction and the prior conviction, we would have proved up each of the allegations regarding the prior offense. We could have put in the transcript of his guilty plea at the state court hearing, and we could have put on the report of the agent to testify as to his confession when he was arrested regarding this offense, and those issues would have been solved. I mean, by preponderance of the evidence, we easily could have established them. What's your view regarding the term of supervised release that would be appropriate here now, given what happened? The length of time when I say term, the temporal term. Are you asking me if I believe that the 3553 analysis is appropriate, or are you asking me about the error in the plea agreement? The error. What did we do to fix the error? What should the trial court do to fix the error? Well, the defendant has not raised it, as he said, and I know, and I think it was footnote 9 or 11, I'm not remembering now, but I briefly said we took no position. We acknowledge the error, and we apologize for that. We took no position on supervised release in the district court the first time around, and we wouldn't make a recommendation. And I've since then spoken to the trial assistant and to my supervisor, but we would be willing, if asked, to recommend, to stand by our plea agreement, to recommend the three years that we were going to put in there. I know that's happened in a couple of past cases. I don't think we're obligated to do that. It's the cleanest and furthest way to resolve it. And so, and again, the district court wouldn't be bound by our recommendation, and the plea agreement makes that clear, but I see my time is up. Okay. Thank you. Thank you. Mr. Ghesi, having begun by asking you how to pronounce your name, I've probably forgotten. I'll call you Mr. Ghesi if it's incorrect. Ghesi is correct. Okay. All right. If they're hearing that last sentence, I didn't know if I was going to stand up, and I thought that was a good recommendation. It's certainly a fair one. I commend their office for making it. They don't have to do that. Yes, and I think the government was fair at the sentencing proceedings. The only thing I was going to say in rebuttal was there were two things, actually. One, I think Mr. Sanders was starting to say that the defendant has a 10-year prison sentence, so we don't need to address that now, and Loy specifically said that you can challenge the terms of supervised release prior to the expiration of the term of imprisonment. And as for whether the government would have called witnesses, as I put in my letter, I don't know if Your Honors received that from yesterday, but the government never said anything with respect to the objections and never when the judge asked whether it was sufficient if he didn't rule on them but just didn't consider it. The government never said, well, we want that to be part of the record. We want to consider it. And I think they were being fair in that because they felt the 10-year mandatory minimum, which more than doubled what would have been if there wasn't the prior would have been, more than doubled what would have been the guideline range. So it wasn't a situation. They had the objections ahead of time. They had never done anything with respect to it. We didn't have anybody there to testify or were going to present anything. So if at the conclusion there was an objection, I don't know whether they would have done that or they would have just submitted to the judge and left it to his discretion to then make his analysis. Thank you. Thank you, counsel, for your argument and briefing. We'll take the matter under advisement.